UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KIMBERLY ROUNDS,

        Plaintiff,

                                        Case No. 2:11-CV-12810

     v.                               Honorable Julian Abele Cook, Jr.

STATE OF MICHIGAN, DEPARTMENT OF
LABOR & ECONOMIC GROWTH

        Defendant.


ORDER

In this case, the Plaintiff, Kimberly Rounds, has accused the Defendant[1] of violating federal and state laws when it (1) failed to accommodate her physical disability in the workplace, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Michigan Persons with Disabilities Act ("MPDA"), Mich. Comp. Laws § 37.1101 et seq., (2) terminated her employment as an improper act of retaliation for engaging in protected activities under the ADA and MPDA, and (3) wrongfully interfered with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Currently before the Court is a motion by the State of Michigan to dismiss the complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).


I.

In her complaint, Rounds alleges that she suffers from long-term, severe allergies to

---

[1]The Defendant, the State of Michigan Department of Labor and Economic Growth (the "State of Michigan" or "DLEG"), is now known as the Michigan Department of Licensing and Regulatory Affairs.

perfumes and other scented substances that have required her to seek and obtain significant medical assistance. In February 2007, she began her employment as an employee of the State of Michigan, with an assignment to work in its Office of Hearings and Appeals ("OHA"), a division of the DLEG, where she claims to have been exposed to co-workers who wore heavy perfume in the workplace. She states that this caused her to require extensive medical treatment and lose a substantial amount of time from work during her tenure at the OHA. On December 3, 2008, the State of Michigan terminated her from its employment rolls, citing an excessive amount of "sick time" that had been taken by her as the basis for its decision. However, after working out a "last chance agreement" with her employer, she returned to work on September 8, 2009. During the following month, Rounds filed a formal internal written request for an ADA accommodation, which was subsequently denied. On February 5, 2010, she filled out FMLA paperwork and left it with her employer. Three days later, she was terminated for having a sick leave balance that ostensibly violated the terms of her "last chance agreement." Her FMLA paperwork was not processed because, the State claims, it was received on the same day as her termination. On March 11, 2011, Rounds filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), in which she attributed the termination of her job to acts of unlawful discrimination and retaliation. The EEOC dismissed this charge and issued a right-to-sue letter on March 24, 2011.

## II.

Invoking the federal question and supplemental jurisdiction of this Court, 28 U.S.C. §§ 1331 and 1367, Rounds initiated the instant lawsuit, in which she cites violations of (1) the ADA; (2) the FMLA; and (3) the MPDA. The State of Michigan responded to the complaint by filing a motion to dismiss for lack of subject-matter jurisdiction. In this motion, it argues that Rounds' claims are

2

barred by the Eleventh Amendment, which prevents a state from being sued in a federal court unless Congress specifically overrides this constitutional prohibition or the state governmental entity consents to be sued. The State of Michigan submits that neither exception is present in this case.

The Court first notes that Rounds' response to the State of Michigan's dispositive motion was filed ten days after the stipulated deadline for a response had expired, and that she did not file a motion for a further extension of time or otherwise acknowledge the untimeliness of her filing. According to Fed. R. Civ. P. 6(b)(1), if a party does not make a request for an extension of time in which to file an otherwise tardy pleading - and if the court does not grant such an extension *sua sponte* - prior to the expiration of the deadline, an extension can be granted only on a motion and upon a finding of good cause and excusable neglect. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896-98 (1990) ("[A]lthough extensions before expiration of the time period may be 'with or without motion or notice,' any *post*deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'"); *Gaskins v. BFI Waste Servs., LLC*, 281 F. App'x 255, 259 (4th Cir. 2008) ("After the . . . deadline had expired, the district court was not empowered, under the plain terms of Rule 6(b)(1), to extend that deadline on its own motion. Rather, the court was only empowered to grant such an extension under Rule 6(b)(2), upon a motion being made by the plaintiffs that was supported by a showing of excusable neglect."); *Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005) (abuse of discretion to entertain late motion when no motion to extend deadline had been filed). Pursuant to these authorities, the Court must, and does, disregard the content of Rounds' response brief.

However, the Court will not grant the pending motion to dismiss simply because Rounds failed to respond to the arguments therein in a timely manner. *Cf. Carver v. Bunch*, 946 F.2d 451,

455 (6th Cir. 1991) (applying this rule to motions under Rule 56 and 12(b)(6)). The Court must - at a minimum - review the movant's brief to ensure that it has fully discharged its burden under the standards that are applicable to 12(b)(1) motions. Here, this burden is minimal because "[w]hen the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002) (quoting *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000)). If a 12(b)(1) attack on subject-matter jurisdiction is a challenge to the sufficiency of the pleading, the court must accept the allegations in the complaint as true. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). However, if the 12(b)(1) attack is a challenge to the factual basis of jurisdiction, the court must weigh the evidence. *Id.*; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[I]n reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction and both parties are free to supplement the record by affidavits."). Here, the 12(b)(1) motion challenges the factual basis of subject-matter jurisdiction.

### III.

The Eleventh Amendment of the U.S. Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Eleventh Amendment prevents a state or its agencies[2] from being sued in a federal court without its consent. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781 (1978). This prohibition extends to "suits brought by the State's own citizens." *Idaho v. Coeur d'Alene Tribe of*

---

[2]It is undisputed that the DLEG is an agency of the State of Michigan which is entitled to the same level of sovereign immunity that is enjoyed by the State of Michigan government.

4

*Idaho*, 521 U.S. 261, 267-68 (1997) (citation omitted). The Eleventh Amendment protects states from litigation in the federal court system because of the "problems of federalism inherent in making one sovereign appear against its will in the courts of the other." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

However, an individual can sue a state under two circumstances: (1) if the state consents to the lawsuit, or (2) when Congress authorizes such an action under its power to enforce the Fourteenth Amendment. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The Court will examine each ground in turn.

First, a state consents to becoming a party to a lawsuit in a federal court if it (1) "voluntarily invokes [the jurisdiction of the court]" or (2) "makes a clear declaration that it intends to submit itself to [the jurisdiction of the court]." *Coll. Sav. Bank*, 527 U.S. at 675-76 (citations and internal quotation marks omitted). A state's consent to be sued "cannot be implied but must be unequivocally expressed." *VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012) (citations omitted).

A state voluntarily invokes federal jurisdiction by removing a case from a state court to a federal tribunal. *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002). In *Lapides*, the State of Georgia voluntarily removed a case to a federal court and thereafter filed a motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity. *Id.* at 616. Concerned that this procedural maneuvering could be unfairly used by states in order to get cases dismissed on jurisdictional grounds (i.e., voluntarily removing a case from a state court - where it may have been unable to advance an argument for immunity - to a federal court, and thereafter getting it dismissed on the basis of sovereign immunity, *id.* at 619-20), the Court concluded that the party that caused the removal had impliedly consented to be sued, *id.* at 624. However, the case at bar is distinguishable

from *Lapides,* in that it was Rounds - not the State of Michigan - that invoked the jurisdiction of this Court. Significantly, the State of Michigan has not engaged in any of the strategic procedural maneuvering that concerned the *Lapides* Court.[3]

A state may also voluntarily invoke federal jurisdiction by "voluntarily intervening in the federal court action." *Baker v. 3M*, 99 F. App'x. 718, 724 (6th Cir. 2004). In *Baker*, the Sixth Circuit held that the State of Kentucky had waived its sovereign immunity when it intervened as a plaintiff in an action against the manufacturers of an allegedly malfunctioning product. *Id.* at 724. Here, by contrast, the State of Michigan - as the Defendant - did not voluntarily intervene as a party to this litigation.

Alternatively, a state can also consent to becoming a party in a lawsuit with a clear declaration that it has waived its sovereign immunity. Here, there is no evidence that the State of Michigan has made such a "clear declaration" of its intent to waive its immunity from being sued in a federal court under the ADA and the FLMA.[4]

---

[3]Even if the Court did consider and evaluate Rounds' untimely response, the outcome would have been the same. Her argument relies on *Meyers ex rel. Benzing v. Texas*, 410 F.3d 326 (5th Cir. 2005), which largely follows the rationale of *Lapides*. For the same reasons that *Lapides* is distinguishable from this case, *Meyers* is also inapposite.

[4]Again, a consideration by the Court of Rounds' tardy response to the State of Michigan's dispositive motion would not change its ultimate decision. She argues that the State of Michigan had clearly declared its consent to be sued when DLEG adopted certain provisions of the ADA and FMLA into its employment policies. This argument is without merit because the policy to which she refers - at least with respect to the ADA - (1) relates only to Title II (provision of services to the public) - and expressly excludes Title I (employment), under which her claim has been brought; and (2) expressly states that it does not constitute a waiver of immunity. More fundamentally, however, an otherwise immune entity cannot be deemed to have "clearly declared" its intent to be stripped of that constitutional safeguard by virtue of its compliance with its obligations under federal law. The State of Michigan has not "chosen" to be bound by the ADA and FLMA. It *is* bound by these laws, notwithstanding that one particular enforcement mechanism (a federal lawsuit against the State of Michigan by an individual) is barred by the Eleventh Amendment.

Finding no evidence that the State of Michigan has consented to being a party to this lawsuit, the Court now turns to the second circumstance in which an individual can sue a state. Congress has validly abrogated a state's sovereign immunity under its power to enforce the Fourteenth Amendment as it pertains to specific litigation only when it has "unequivocally expresse[d] its intent to abrogate the immunity" and has "acted pursuant to a valid exercise of power." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (citations and internal quotation marks omitted). The Court agrees with the argument by the State of Michigan that Congress has not validly abrogated the sovereign immunity of the states under those provisions of the ADA and the FMLA which form the bases for Rounds' charges in this lawsuit. Her claims under Title I of the ADA are foreclosed by *Board of Trustees of University of Alabama v. Garret*, 531 U.S. 356 (2001), in which the Supreme Court held that Title I ADA claims against a state are barred by the Eleventh Amendment. Her claim under FMLA is foreclosed by *Touvell v. Ohio Department of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 400 (6th Cir. 2005), which holds that claims against states under the self-care provisions of this statute are barred by the Eleventh Amendment. With recognition that Rounds has brought her FMLA claim under the self-care provision, 29 U.S.C. § 2612(a)(1)(D), her claim is barred by *Touvell*.

Rounds has failed to meet her burden of establishing the subject-matter jurisdiction of the Court over this case. An examination of the official record herein reveals that there is no evidence that (1) the State of Michigan has consented to be sued under either of the federal statutes upon which she relies, or (2) Congress has abrogated the State of Michigan's sovereign immunity under Title I of the ADA or the self-care provision of the FMLA. Thus, Counts I, II and III of Rounds' complaint are dismissed.

7

IV.

The Court now turns to the only remaining claim: a state law claim under the MPDA. According to 28 U.S.C. § 1367(c)(3), a court may decline to exercise its supplemental jurisdiction if all claims over which it would have had original jurisdiction are dismissed. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (internal citations omitted). "In determining whether to retain jurisdiction of the state claims, '[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues.'" *Gordon v. Home Loan Ctr.*, No 10-10508, 2011 WL 1261179, at *6 (E.D. Mich. Mar. 31, 2011) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)). However, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. In this case, the Court will decline to exercise its supplemental jurisdiction over the pending state law claims. Thus, the remaining state law claim (Count IV of the complaint) is dismissed.

V.

For the foregoing reasons, the State of Michigan's motion to dismiss the complaint for lack of subject matter jurisdiction is granted.

IT IS SO ORDERED.

Date: July 6, 2012                                s/Julian Abele Cook, Jr.
                                                 JULIAN ABELE COOK, JR.
                                                 U.S. District Court Judge

8

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 6, 2012.

s/ Kay Doaks
Case Manager